IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| WAFORD K. BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:12-cv-00093 |
| ) | Judge Haynes |
| TERRY JACKSON, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Plaintiff Waford K. Bryant, an inmate of the Tennessee Department of Correction formerly housed at the South Central Correctional Facility in Clifton, Tennessee, pursues this action *pro se* under the authority of 42 U.S.C § 1983 for alleged violation of his constitutional rights. Specifically, Plaintiff alleges that on May 29, 2012, Defendant Jackson subjected him to an excessive use of force in violation of the Eighth Amendment, and that Defendants Trafton and Pope witnessed Jackson's excessive force and failed to take any action to stop it. Currently before the Court are Motions for Summary Judgment filed on behalf of all the Defendants, including South Central Correctional Facility ("SCCF"). (Docket Entry Nos. 142, 151.) The Motions are fully briefed and ripe for review by the Court. For the reasons set forth below, SCCF's Motion for Summary Judgment (Docket Entry No. 151) will be **GRANTED**, and the motions will be **DENIED** with respect to all other Defendants.

**I. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c)(2). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537–38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative,"

or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247–49).

## II. REVIEW OF THE RECORD

Plaintiff's sworn complaint states that on the date in question he was segregated in the infirmary for creating a disturbance. (Docket Entry No. 8, at 8.) Because he had been harassed by a captain (presumably Defendant Jackson), Plaintiff feared for his safety and wanted to stay in handcuffs to ensure that, per policy, he would remain on camera. (*Id.* at 8–9.) Defendant Jackson entered Plaintiff's cell, grabbed his right arm and pushed him to the ground with his handcuffs on, and proceeded to hit and choke Plaintiff while Defendants Trafton and Pope did nothing to stop the assault. (*Id.* at 9.) Plaintiff states that Internal Affairs investigated the matter as a result of his grievance about this incident, and he was told that Defendant Jackson was fired. (*Id.* at 3.) Plaintiff has submitted Tennessee Department of Correction grievance documents indicating that by June 4, 2012, Internal Affairs was indeed investigating his complaint. (*Id.* at 12–16.)

Defendant Jackson denies that he used any excessive force on Plaintiff. He has testified by affidavit that on the date in question, he, Defendant Pope and Defendant Trafton approached Plaintiff's cell in order to remove his restraints. (Docket Entry No. 144, at ¶3.) Jackson gave Plaintiff several verbal directives to approach the door and have the restraints removed, but Plaintiff refused. (*Id.*) Jackson, Pope and Trafton then entered the cell, where Jackson removed one of Plaintiff's restraints without incident. (*Id.* at ¶4.) But when Jackson attempted to remove

the second restraint, Plaintiff suddenly pulled away and sat on the floor, refusing to allow Jackson to remove the second restraint. (*Id.* at ¶5.) Jackson attempted to remove the second restraint with Plaintiff in the floor, but Plaintiff refused and screamed at the officers to leave him alone. (*Id.* at ¶ 7.) When Jackson realized that he would not be able to remove the second restraint without force, he decided instead to leave the cell and try to remove the restraint later when Plaintiff had calmed down and was less defiant. (*Id.* at ¶8.) All three officers left the cell. (*Id.*)

Defendants Pope and Trafton have submitted affidavits that are almost identical to one another, and recount a version of events similar to Jackson's with a few material differences. (Docket Entry Nos. 154, 155.) Specifically, both Pope and Trafton testify that as Plaintiff resisted Jackson after removal of the first restraint, Plaintiff "went to the floor," and that "Jackson continued to struggle" with Plaintiff "in an attempt to bring him under control and remove the remaining restraint." (*Id.* at ¶10–11.) They testify that "Jackson eventually gave up trying to remove the last remaining restraint" and that the three officers exited the cell. (*Id.* at ¶13–14.) Both Pope and Trafton testify that they did not see Jackson punch or choke Plaintiff or otherwise use any excessive force during the incident, and that no intervention was necessary. (*Id.* at ¶15–18.) They testify that pursuant to applicable policy, the force Jackson used – physical handling – was a first level use of force and was reasonable and necessary under the circumstances. (*Id.* at 20–22.)

Defendants have also submitted copies of institutional records relevant to this action. Plaintiff's medical progress record covering the date of the alleged assault establishes that, shortly after the incident, Plaintiff reported to a healthcare provider that Jackson had thrown him

the second restraint, Plaintiff suddenly pulled away and sat on the floor, refusing to allow Jackson to remove the second restraint. (*Id.* at ¶5.) Jackson attempted to remove the second restraint with Plaintiff in the floor, but Plaintiff refused and screamed at the officers to leave him alone. (*Id.* at ¶ 7.) When Jackson realized that he would not be able to remove the second restraint without force, he decided instead to leave the cell and try to remove the restraint later when Plaintiff had calmed down and was less defiant. (*Id.* at ¶8.) All three officers left the cell. (*Id.*)

Defendants Pope and Trafton have submitted affidavits that are almost identical to one another, and recount a version of events similar to Jackson's with a few material differences. (Docket Entry Nos. 154, 155.) Specifically, both Pope and Trafton testify that as Plaintiff resisted Jackson after removal of the first restraint, Plaintiff "went to the floor," and that "Jackson continued to struggle" with Plaintiff "in an attempt to bring him under control and remove the remaining restraint." (*Id.* at ¶10–11.) They testify that "Jackson eventually gave up trying to remove the last remaining restraint" and that the three officers exited the cell. (*Id.* at ¶13–14.) Both Pope and Trafton testify that they did not see Jackson punch or choke Plaintiff or otherwise use any excessive force during the incident, and that no intervention was necessary. (*Id.* at ¶15–18.) They testify that pursuant to applicable policy, the force Jackson used – physical handling – was a first level use of force and was reasonable and necessary under the circumstances. (*Id.* at 20–22.)

Defendants have also submitted copies of institutional records relevant to this action. Plaintiff's medical progress record covering the date of the alleged assault establishes that, shortly after the incident, Plaintiff reported to a healthcare provider that Jackson had thrown him

to the ground and hit him. (Docket Entry No. 150-4.) The provider found Plaintiff to be alert and oriented, observed no physical injuries other than a small red area in the center of his chest, and prescribed no treatment. (*Id.*)

Internal investigation records establish that the investigator could not find any evidence that Jackson used excessive force on Plaintiff, but that Jackson had violated policy by failing to report the use of force. Specifically, when Plaintiff's grievance prompted investigation, Jackson submitted a written statement about the incident expressly denying the use of any force, and instructed Defendants Trafton and Pope to do the same. Only upon further questioning did Defendants Trafton and Pope reveal that Jackson had struggled with Plaintiff for several minutes. (Docket Entry Nos. 150-1, 150-3.) The records before the Court do not establish what, if any, discipline Jackson faced as a result of the policy violation. Jackson's affidavit indicates that he is no longer employed at SCCF (Docket Entry No. 144, at ¶2), but all Defendants have denied that he was terminated for excessive force. (Docket Entry No. 43, at 1–2; 53, at 1–2.)

Finally, Defendants have submitted video footage from the hallway outside Plaintiff's cell during the relevant time frame. (Exhibit manually filed on 11/17/2014.) The video shows the three officers entering the hallway and approaching Plaintiff's cell. The footage is not accompanied by audio to capture any directives to Plaintiff to approach the door for removal of his restraints, but within seconds of the officers' arrival at Plaintiff's door, it appears that Jackson instructs Pope to unlock Plaintiff's cell door. At approximately 5:03, Jackson and Trafton enter Plaintiff's cell. Pope remains alone in the hallway until something inside the cell appears to get his attention, and he enters the cell approximately 30 seconds later, at 5:04. All three officers remain in the cell for another seven minutes, and exit together at 5:11. Nothing that occurred

inside the cell is visible on the video.

**III. ANALYSIS**

    **A.    EXCESSIVE FORCE**

An Eighth Amendment excessive force claim has both a subjective and objective component. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). To determine whether the subjective component is met, the question is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Considerations relevant to this subjective component may include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Williams*, 631 F.3d at 383 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The objective component asks whether the pain inflicted was "sufficiently serious." *Williams*, 631 F.3d at 383 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component is met when force is used maliciously and sadistically to cause harm whether or not significant injury is evident. *Williams*, 631 F.3d at 383 (citing *Wilson*, 501 U.S. at 289); *see also Wilkins*, 559 U.S. at 34.

Defendants assert that they are entitled to summary judgment because Plaintiff did not suffer more than a *de minimis* injury. The Supreme Court has clarified, however, that an inmate is not required to establish that he suffered from a significant injury requiring medical attention, or any other "arbitrary quantity of injury," to satisfy the objective prong of an Eighth Amendment excessive force claim. *Wilkins*, 559 U.S. at 39. The extent of an inmate's injury is but one factor to consider in determining the reasonableness of the force exercised, and any use of force "of a

sort repugnant to the conscience of mankind" may be prohibited by the Eight Amendment. *Id.* at 37–38. The "'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Plaintiff's lack of significant injury arising from the alleged use of force does not, therefore, entitle Defendants to summary judgment. Plaintiff's sworn complaint states that Defendant Jackson pushed him to the ground and beat and choked him while Plaintiff was restrained in handcuffs. A jury could find that sort of attack on a restrained inmate to be excessive. *See, e.g., Shelton v. Bledsoe*, 522 F. App'x 109, 112–13 (3rd Cir. 2013) (reversing summary judgment for defendant where plaintiff alleged he was assaulted by officers while he was restrained in handcuffs and on the ground).

To the extent Defendants argue that the lack of serious injury discredits Plaintiff's version of events, the Court is not in a position to opine on the likelihood or extent of injuries an individual would exhibit after the type of assault the Plaintiff alleges. Moreover, any credibility problem with Plaintiff's case must be weighed against the Defendants' credibility problem arising from their initial failure to report and subsequent false report about the incident in question.[1] Weighing the conflicting evidence and determining which party is more credible is the

---

[1] Another factor to be weighed is whether a struggle to *remove* restraints from an allegedly defiant, resisting, screaming inmate constitutes a good faith effort to maintain or restore discipline or is even credible.

function of a jury, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"), and the jury may weigh Plaintiff's lack of serious injury both in determining liability and in assessing any damages awarded. *See Wilkins*, 559 U.S. at 40 ("the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover"). Summary judgment is inappropriate on this claim because there is a genuine dispute of material fact concerning the amount and purpose of the force used against Plaintiff, which must be determined by a jury.

B.   FAILURE TO PROTECT

Defendants Trafton and Pope argue that they are entitled to summary judgment on the claims against them for failure to protect Plaintiff from the alleged excessive force. To establish a cause of action against non-supervisory personnel for failure to protect, an inmate must show that the defendants observed or had reason to know about the excessive force, and had the opportunity and the means to prevent the injury. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Defendants Trafton and Pope assert that "the record clearly indicates" that they did not observe any excessive force against Plaintiff so were not required to intervene, and that the struggle between Plaintiff and Defendant Jackson happened so quickly that they had no opportunity to prevent or stop it. This version of the facts cannot be reconciled with Plaintiff's sworn complaint, and is further called into question by the fact that all three Defendants were in Plaintiff's cell for more than seven minutes. There is a genuine dispute of material fact about what took place during those minutes, which must be resolved by a jury.

### C. SOUTH CENTRAL CORRECTIONAL FACILITY

Plaintiff also names SCCF as a Defendant to this action. The facility itself is a building, not a person amenable to suit under § 1983. *See Travis v. Clinton County Jail*, No. 1:10-cv-1276, 2011 WL 447000, at *2 (W.D. Mich. Feb. 4, 2011) ("The jail is a building, not an entity capable of being sued in its own right."). Construing the complaint liberally in favor of the *pro se* Plaintiff, the Court construes this claim to be brought against Corrections Corporation of America, the corporation that privately operates SCCF. Although a private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983, it cannot be found liable solely on the basis of *respondeat superior*. *Thomas v. Coble*, 55 F. App'x 748, 748–49 (Cir. 2003). For the corporation to be liable, an inmate must prove that his injury was caused by an action taken pursuant to some official policy or custom. *Id.* at 749 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In this case, Plaintiff has not alleged that the force used against him by Defendant Jackson, or the other Defendants' failure to stop it, was the result of any policy or custom of CCA. To the contrary, both Plaintiff's sworn complaint and the internal records filed with the Court indicate that Jackson was investigated and found to have failed to comply with institutional policy in connection with his failure to report his use of force against Plaintiff. Moreover, Defendants Pope and Trafton have testified by affidavit that applicable policy requires any force used to be no more than what is reasonable and necessary under the circumstances (Docket Entry Nos. 154 and 155, at ¶20–21), which Plaintiff has not rebutted. Accordingly, SCCF is entitled to summary judgment on the claims against it.

## IV. CONCLUSION

For the reasons stated above, Defendant South Central Correctional Facility's Motion for Summary Judgment will be **GRANTED**. The Motions for Summary Judgment by Defendants Jackson, Trafton and Pope will be **DENIED**.

WILLIAM J. HAYNES, JR.
Senior United States District Judge
1-16-13